# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CHUCK NICHOLSON, et al., | ) | CASE NO. 5:15-cv-2010 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| JAYCO, INC., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court upon the following:

(1) The motion of defendant Motor Home Specialist LP ("MHS") to dismiss the complaint of plaintiffs Chuck Nicholson ("Nicholson") and Chuck Nicholson, Inc. ("CNI") (collectively "plaintiffs") pursuant to Rule 12 of the Federal Rules of Civil Procedure. (Doc. No. 6 ("MHS Mot.").) Plaintiffs opposed the motion (Doc. No. 37 ("Opp'n to MHS Mot."), to which MHS replied (Doc. No. 44 ("MHS Reply")).[1]

(2) The motion of defendant Jayco, Inc. ("Jayco") for summary judgment,[2] or alternatively, for judgment on the pleadings. (Doc. No. 18 ("Jayco Mot.").) Plaintiffs opposed the motion (Doc. No. 33 ("Opp'n to Jayco Mot.")), to which Jayco replied (Doc. No. 40 ("Jayco Reply")). Thereafter, both plaintiffs and Jayco filed supplemental information in support of their respective positions. (Doc. No. 45 ("Pl. Supp.") and Doc. No. 47 ("Jayco Supp.").)

---

[1] MHS' unopposed motion for leave to exceed the page limitation of the Local Rules with respect to its reply is granted. (Doc. No. 43.)

[2] Jayco moved for summary judgment early in this case before a case management plan was established. Plaintiffs did not seek relief pursuant to Fed. R. Civ. P. 56(d) before responding to Jayco's motion.

(3) The motion of plaintiffs to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Doc. No. 30 ("P. Mot.").) Jayco opposed the motion to amend.[3] (Doc. No. 38 ("Opp'n to P. Mot.").) Neither MHS nor defendant Spartan Motors Chassis ("Spartan") opposed the motion to amend.

For the reasons that follow, MHS' motion is granted, Jayco's motion is granted in part and denied in part, and plaintiffs' motion is denied.

## I. BACKGROUND

This case revolves around a motor home that plaintiffs contend is defective. The subject vehicle is a 2014 Entegra Cornerstone ("RV"). The RV was manufactured by defendants Spartan and Jayco, and purchased new from defendant MHS.

Plaintiff Nicholson resides in Millersburg, Ohio. According to the complaint, Nicholson sometimes purchases consumer goods in the name of Chuck Nicholson Leasing, and/or Chuck Nicholson Leasing, Inc., and/or CNI (Doc. No. 1 ("Compl.") ¶ 4) in order to secure licensing, tax, and insurance benefits (Doc. No. 33-1 (Dec. 30, 2015 Affidavit of Chuck Nicholson ["12/30/15 Nicholson Aff."] ¶ 6). Even though Nicholson insists that the RV was purchased for his personal use and enjoyment, the RV was purchased by a Nicholson business. (Doc. No. 33-9 (Jan. 19, 2016 Affidavit of Chuck Nicholson ["1/19/16 Nicholson Aff."]) ¶¶ 3, 4.) Nicholson traveled to Texas to purchase and take delivery of the RV. (Doc. No. 6-1 (Declaration of Robert Brake Oct. 26, 2015 ["10/26/15 Brake Dec."]) ¶ 7.)

---

[3] The Court granted plaintiffs' motion for an extension of time to reply to Jayco's opposition, but no reply was filed. (*See* Doc. No. 42.)

Spartan constructs chassis for motor homes and sells the chassis to Jayco. Jayco then constructs and finishes the motor homes, and sells the finished vehicles to retailers, such as MHS. MHS advertises the motor homes on the internet and sells them to the public. This was the path followed by the RV at issue in this case. (*Id.* ¶ 7.)

The RV was purchased on February 5, 2014 from MHS. (*Id.* ¶ 21.) Plaintiffs allege that MHS knew that the RV was intended for personal use, and that Nicholson told MHS that he was considering identifying the purchaser on the sales agreement as "Chuck Nicholson Leasing Inc." but that Nicholson "would personally sign as the purchaser of the subject RV and [MHS] assured him that it would be no problem to do it that way." (*Id.* ¶¶ 23-24.) The sales agreement with MHS for the RV identifies Chuck Nicholson Leasing Inc. as the purchaser and transferee of title. (Doc. No. 1-3 ("Sales Agreement").)

Plaintiffs allege that Jayco and/or Spartan warranted the RV in whole or in part. (Compl. ¶ 13.) With respect to Jayco, plaintiffs contend that Jayco advertised a 2 year warranty on the RV, but did not disclose any warranty limitations until after the RV was purchased, in violation of Ohio and Texas law. (*Id.* ¶¶ 18-19.)

About one month after purchasing the RV, plaintiffs contend that it developed malfunctions and defects which Jayco and Spartan failed to correct within a reasonable number of repair and service opportunities within a reasonable amount of time. (*Id.* ¶¶ 32-33, 36.) Plaintiffs further allege that they "gave up" on either Spartan or Jayco remedying the defects, that Spartan and Jayco failed to satisfy the warranties, and that when plaintiffs demanded their money back for the RV, Jayco refused. (*Id.* ¶¶ 34-35.) Additional facts are detailed below as relevant to the Court's analysis.

In their first claim—Breach of Warranty—plaintiffs maintain that because Spartan and Jayco failed to repair the RV's defects, Spartan and Jayco breached their express and implied warranties and committed unfair, deceptive, and unconscionable trade practices with respect to the RV, and that any limitations on the warranty lack consideration and/or are unconscionable. (*See id*. ¶¶ 37-48.)

On these same facts, plaintiffs allege in their second claim that Jayco and Spartan violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (*Id*. ¶¶ 49-52.) Finally, in the third claim, plaintiffs contend that the defendants' actions with respect to the manufacture, advertisement, sale, and service of the RV violates Ohio's Consumer Sales Practices Act, and/or Texas' Deceptive Trade Practices Consumer Protection Act, and/or one or more state unfair and deceptive acts and practices laws. (*Id*. ¶¶ 53-68.) Specifically, plaintiffs allege that Spartan's chassis, and the house constructed on the chassis by Jayco, are defective, and defendants failed to satisfy their representations and warranties regarding the RV. With respect to MHS, plaintiffs allege that defendant made false and deceptive representations about the RV and applicable warranties in connection with the advertising and sale of the RV.

The pending motions may be summarized as follows. MHS argues that it should be dismissed from this lawsuit for lack of personal jurisdiction and improper venue. Jayco's primary argument on summary judgment is that motor homes used for a commercial purposes are excluded from Jayco's warranty. Jayco contends that there is no warranty on the RV because it was purchased by and titled to a Nicholson business, and, therefore, subject to Jayco's commercial purpose warranty exclusion. Finally, plaintiffs' motion to amend seeks to add an allegation in their third claim that defendants violated

the Ohio Nonconforming New Motor Vehicle law (Ohio Rev. Code § 1345.71 *et seq.*), and to add a new fourth claim by CNI for violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.01 *et seq.*).

## II. MOTOR HOME SPECIALISTS' MOTION TO DISMISS

MHS argues that it should be dismissed from this lawsuit pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction under Ohio's Long-Arm Statue, Ohio Rev. Code § 2307.382, and pursuant to Rule 12(b)(3). Because MHS' Rule 12(b)(2) motion is granted, the Court need not address the parties' arguments regarding venue pursuant to Rule 12(b)(3).

### A. Standard of Review—Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a defendant for lack of personal jurisdiction over the defendant. Where the Court's subject matter jurisdiction arises, as it does in this case, under 28 U.S.C. § 1331, plaintiffs must satisfy the forum state's requirements for personal jurisdiction. *Chapman v. Lawson*, 89 F. Supp. 3d 959, 970 (S.D. Ohio 2015) (citing *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002)). "Under Ohio law, personal jurisdiction exists only if: (1) Ohio's long-arm statute confers jurisdiction, *and* (2) the requirements of the federal due process clause are met." *Id.* (emphasis in original) (citations omitted).

Plaintiffs bear the burden of establishing the existence of personal jurisdiction over MHS. *Compuserve Inc. v. Patterson,* 89 F.3d 1257, 1262–63 (6th Cir. 1996). In the face of a supported motion to dismiss, plaintiffs may not rest upon their pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). In considering a properly

supported motion to dismiss for lack of personal jurisdiction, a district court has discretion to decide the motion upon the affidavits alone, permit discovery in aid of deciding the motion, and/or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen,* 935 F.2d at 1458 (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Here, no party has requested further discovery or an evidentiary hearing, and Court concludes that a hearing is not necessary in order to rule on MHS' motion.

Where a district court decides the issue solely on the basis of written materials and affidavits, "the burden on the plaintiff is relatively slight, ... and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal[.]" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff can meet his burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted).

When making a personal jurisdiction determination, the district court "must view the pleadings and affidavits in the light most favorable to [the plaintiff] and not consider the controverting assertions of [the defendant]. *Calphalon,* 228 F.3d at 721. This rule "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Theunissen,* 935 F.2d at 1459. However, defendants' undisputed factual assertions may be considered. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

In support of its motion, MHS submits the declarations of Robert Brake, MHS' Chief Operating Officer and General Manager. Plaintiffs counter with the affidavits of Nicholson and one of plaintiffs' attorneys. The Court also considers various exhibits submitted by the parties in connection with MHS' motion that are central to plaintiffs' claims.[4] *See Fordham Fin. Servs., Inc. v. Ventramex S.A. de C.V.*, No. 106-CV-00513, 2007 WL 1598084, at *8 (S.D. Ohio June 1, 2007).

**1. Ohio's long-arm statute**

MHS is a limited partnership, organized and existing under the laws of Texas and its only place of business is in Alvarado Texas. (10/26/15 Brake Dec. ¶ 3.) Ohio's long-arm statute confers jurisdiction over a non-resident only if the defendant's conduct falls within one of the nine bases for jurisdiction listed in Ohio Rev. Code § 2307.382(A):

(A) A court may exercise personal jurisdiction over a person[5] who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

---

[4] Neither party has objected or sought to strike any exhibit submitted by the other party in connection with MHS' Rule 12(b)(2) motion.

[5] Ohio Rev. Code § 2307.381 defines "person" as follows:

As used in sections 2307.381 to 2307.385, inclusive, of the Revised Code, "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this state.

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev. Code § 2307.382(A)(1)-(9) (footnote added).

The complaint alleges that MHS is engaging in business acts, trade, and advertising in Ohio of recreational vehicles, including the RV. (*See* Compl. ¶¶ 10-12.) Plaintiffs claim that this Court has personal jurisdiction over MHS pursuant to Ohio Rev. Code §§ 2307.382(A)(2), (A)(4), and (A)(5).[6] (Opp'n to MHS Mot. at 652.[7])

---

[6] Ohio Rev. Code § 2307.382(A)(1) provides that a court may exercise personal jurisdiction over a person "transacting any business in this state[,]" and the cause of action arises from those acts (*see* Ohio Rev. Code § 2307.382(C)). In its motion, MHS argues that even if plaintiffs' allegations are true, mere solicitation of business does not constitute transacting business in Ohio for purposes of personal jurisdiction, and that plaintiffs have not alleged that their injury arises from MHS' alleged acts. (MHS Mot. at 94, citing *Wargo v. Lavandeira*, No. 1:08 CV 02035, 2008 WL 4533673, at *2 (N.D. Ohio 2008).) Plaintiffs deny, however, that they are claiming personal jurisdiction over MHS pursuant to § 2307.382(A)(1). (Opp'n to MHS Mot. at 655.)

[7] All page number references are to the page identification number generated by the Court's electronic docketing system.

**Ohio Rev. Code § 2307.382(A)(2)—contracting to provide goods or services in Ohio**

Plaintiffs contend that this section is a basis for jurisdiction because MHS contracted to supply goods to be delivered in Ohio by negotiating with plaintiffs (who are Ohio residents) by telephone and email concerning the sale terms of the RV, and by ultimately entering into a contract for sale of the RV with Ohio residents where MHS knew that the RV would be titled, registered, and stored. (*Id.* at 652-53, citing 12/30/15 Nicholson Aff.) Plaintiffs cite no legal authority that these acts by MHS, even if true, are sufficient under Ohio law to establish personal jurisdiction over MHS pursuant to § 2307.382(A)(2).[8]

MHS argues that plaintiffs' alleged facts are insufficient to satisfy the plain language of the statute, which requires MHS to supply goods in Ohio in order to trigger Ohio long-arm jurisdiction under § 2307.382(A)(2). (MHS Reply at 881, citing *Kobill Airways Ltd. v. Nat'l Flight Servs., Inc.*, 92 F. Supp. 2d 689, 691-92 (N.D. Ohio 2000)).

While plaintiffs recognize that "[a] defendant that contracts to supply goods to be delivered in Ohio is subject to jurisdiction under RC 2307.382(A)(2) in a cause of action arising out of such a contract[,]"[9] plaintiffs do not contend that the RV was delivered to Ohio. Nor do plaintiffs dispute that Nicholson traveled to MHS' facility in Alvarado, Texas to execute the sales agreement and submit payment for the RV. Upon completion of the transaction, plaintiffs took delivery of the RV at MHS' facility in Texas and drove

---

[8] Plaintiffs cite *Busch v. Serv. Plastics, Inc.*, 261 F. Supp. 136, 140 (N.D. Ohio 1966). This case does not help plaintiffs' cause. In *Busch*, the court concluded that there was no personal jurisdiction over non-resident defendant pursuant to § 2307.382(A) where plaintiff was not a party to a contract with defendant, and there was no evidence that defendant contracted to supply plastic jug handles in Ohio.

[9] Opp'n to MHS Mot. at 652.

the RV from there. (*See* 10/26/15 Brake Dec. ¶ 7 ("MHS did not ship or deliver the subject motorhome to Ohio.").)

"Ohio courts hold that the actual transaction of business in-state is a prerequisite to the exercise of long-arm jurisdiction under § 2307.382(A)(2)." *Kobill Airways Ltd.*, 92 F. Supp. 2d at 692; *see also Rosenberg v. ABF Freight Sys., Inc.*, No. 2:13-CV-651, 2014 WL 1308805, at *5 (S.D. Ohio Mar. 31, 2014) (citing *Kobill Airways Ltd.,* 92 F. Supp. 2d at 692) (further citation omitted). Even taken as true, the factual bases advanced by plaintiffs concerning their communications in Ohio with MHS prior to the purchase and delivery of the RV in Texas are insufficient to make a prima facie showing of jurisdiction pursuant to subsection (A)(2) of Ohio's long-arm statute. Plaintiffs have failed to allege facts that, if believed, establish that MHS contracted with plaintiffs to provide goods or services in Ohio. *See Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) (Canadian company arranging hunting trip to Canada with Ohio resident by telephone, fax, email, and mail does not provide a factual basis to show that Canada North supplied any goods or services in Ohio that would subject it to jurisdiction under Ohio Rev. Code § 2307.382(A)(2)).

### Ohio Rev. Code § 2307.382(A)(4)—causing tortious injury by an act or omission outside of Ohio

Plaintiffs also argue that the Court has personal jurisdiction over MHS pursuant to Ohio Rev. Code § 2307.382(A)(4) because MHS caused tortious injury to plaintiffs in Ohio by misrepresenting the RV and Jayco's warranty terms during the negotiation and sale of the RV, and that MHS regularly solicits and does business with Ohio residents. (Opp'n to MHS Mot. at 653.) Plaintiffs contend that through the internet, MHS "specifically targets" Ohio residents on their website by listing testimonials from Ohio

residents,[10] and that MHS' interactive website allows consumers to shop for an RV, submit a credit application, and request a trade-in appraisal.[11] Plaintiffs also advance MHS' "finders' fee" referral program as further evidence that MHS targets and solicits Ohio residents, including Nicholson's own finders' fee agreement with MHS, by which MHS paid Nicholson $500 for referring a customer to MHS.[12] (Opp'n to MHS Mot. at 653-54.) Plaintiffs cite no legal authority in support of their argument that the above-described acts by MHS, even if true, support a finding that MHS "regularly does or solicits business, or engages in any other persistent course of conduct, or derives

---

[10] Plaintiffs advance no case law to support their argument that simply listing testimonials of Ohio residents who purchased motor homes from MHS "targets" Ohio residents and is sufficient to establish a prima facie basis for personal jurisdiction. While commercial efforts directed towards Ohio residents can establish personal jurisdiction under subsection (A)(4), plaintiffs have alleged no such facts in this case. *See e.g. Gutter Topper, Ltd. v. Hart & Cooley, Inc.*, No. CIV.A. 1:04CV655, 2005 WL 1076251, at *2 (S.D. Ohio May 6, 2005) ("Hart & Cooley has purposely directed its commercial efforts toward Ohio residents in two key ways. First, Hart & Cooley has provided product and sales videotapes to distributors and dealers in Ohio. Second, Hart & Cooley operates an intermediate interactive website located at *www.gutterhelmet.com* through which customers in Ohio may inquire about becoming a Gutter Helmut dealer and/or locate and acquire information about local dealers. Collectively, these alleged contacts are sufficient to warrant a *prima facie* finding of jurisdiction.").

[11] Plaintiffs' counsel avers that an Ohio consumer can shop, submit a credit application, and request a trade-in appraisal on MHS' interactive website. (Doc. No. 37-12 (Affidavit of Elizabeth Ahern Wells ["Wells Aff."]) ¶¶ 2-3.) Plaintiffs do not suggest that they utilized these functions when they purchased the RV, and MHS avers that they did not. (*See* Doc. No. 44-1 (Declaration of Robert Brake Feb. 19, 2016 ["2/19/16 Brake Dec."]) ¶ 8.) Plaintiffs also do not contest that a consumer cannot purchase a motor home, enter into a contract, or submit payment online. (*Id.* ¶ 9.) MHS' partially interactive website, without more, does not support jurisdiction under Ohio's long-arm statute. *See Logue v. Siesta 4-Rent*, No. 2:05-CV-132, 2005 WL 1421958, at *4 (S.D. Ohio June 17, 2005) (No long-arm jurisdiction under subsection (A)(1) or (A)(4) where defendant's website was not fully interactive because although information was available and an order form could be downloaded, no order could be placed over the internet. Moreover, defendants maintained no office or phone number in Ohio.) Interactive websites can serve as a basis for personal jurisdiction under Ohio's long-arm statute under certain circumstances, such as where goods are regularly sold to Ohio residents through the website and sales taxes are collected from Ohio customers. *See NCR Corp. v. PC Connection, Inc.*, 384 F. Supp. 2d 1152, 1159 (S.D. Ohio 2005). However, the record here does not support a finding that MHS' website offers that level of interactivity.

[12] These facts do not establish that MHS' finders' fee program targets or is directed to Ohio residents. Indeed, plaintiffs acknowledge that the program is a "nationwide" referral plan that pays a finders' fee to "any prior purchaser that refers a buyer to MHS." (*See* Opp'n to MHS Mot. at 655.) Further, they do not contest that the program is not contingent upon the state of residence of the referring or referred customer. (2/19/16 Brake Dec. ¶ 5.) It is true that Nicholson received a finders' fee from MHS for referring a customer to MHS, but that customer resides in Canada, not Ohio, and Nicholson does not claim to the contrary. (*Id.*; *see also* 12/30/15 Nicholson Aff. ¶ 12.)

substantial revenue from goods used or consumed or services rendered *in [Ohio]*[.]" Ohio Rev. Code § 2307.382(A)(4) (emphasis added).

"A prerequisite to granting jurisdiction under [both subsections (A)(4) and (A)(5)] of the Ohio long-arm statute, plaintiffs must satisfy that defendant: 1) derives "substantial revenue" from goods used in Ohio; 2) regularly does or solicits business in Ohio; or 3) engages in any other persistent course of conduct in Ohio." *Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 2d 847, 850 (N.D. Ohio 2009) (citations omitted). This showing requires more than sporadic contact by the defendant with Ohio. *Id*. at 851 (five to eight orders a year placed with non-resident defendant are limited transactions, not regular business dealings)*; Estate of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio Ct. App.1999).

Plaintiffs have alleged no facts sufficient to establish that MHS derives substantial revenues from goods used in Ohio. MHS, on the other hand, has offered the uncontested declaration of its Chief Operating Officer and General Manager that in 2013 and 2014 MHS sold 0.003% of its motor homes to individuals from Ohio, and earned 0.003% of its gross revenues and net profits from those sales. Those percentages include the RV at issue in this case, and all of those motor homes, including the RV, were sold and delivered to the customer in Texas. (2/19/16 Brake Dec. ¶ 3.) MHS' very low percentage of revenue from motor home sales to individuals in Ohio does not constitute "substantial revenue" for purposes of obtaining personal jurisdiction under subsection (A)(4).  *See Beightler*, 610 F. Supp. 2d at 850 (revenue of less than 1% of total sales is not substantial) (citations omitted).

This lack of substantial revenue also warrants a conclusion that MHS does not regularly do or solicit business in Ohio. *See Beightler*, 610 F. Supp. 2d at 850 (citing *Lewis v. Horace Mann Ins. Co.*, No. 82530, 2003 WL 22251577, at *6 (Ohio Ct. App. Oct. 2, 2003) (revenue of $12,000 where annual gross receipts between $2 and $3 million does not warrant a finding non-resident defendant either conducted regular business or derived substantial benefit from Ohio for the purpose of establishing personal jurisdiction under Ohio Rev. Code § 2307.382(A)(4)).

Other ways plaintiffs could show that MHS regularly does or solicits business in Ohio, or engages in other persistent conduct in Ohio, would be to demonstrate  that MHS maintained an office in Ohio, employed a sales force in Ohio, or continuously relied upon independent sales or service representatives. *See Estate of Poole*, 731 N.E.2d at 229–30 (telephone listings in Ohio for non-resident doctor in Kentucky does not satisfy requirement of long-arm statute that the non-resident defendant regularly does or solicits business or engages in a persistent course of conduct in Ohio) (citations omitted). Plaintiffs allege no such facts, and do not contest that MHS does not maintain an agent for service of process in Ohio; pay taxes in Ohio; employ anyone in Ohio for any purpose, including soliciting or transacting business in Ohio; maintain corporate records in Ohio; hold an Ohio license; own or lease property in Ohio; or maintain an office or other tangible asset in Ohio. (10/26/15 Brake Dec. ¶ 5.) Plaintiffs also do not contest that MHS never employed anyone in Ohio to solicit or transact business in Ohio, is not licensed or authorized to do business in Ohio, and is not an Ohio corporation. (*Id*. at ¶¶ 3, 5.)

Plaintiffs have failed to allege facts that establish MHS derives "substantial revenue" from goods used in Ohio, regularly does or solicits business in Ohio, or engages in any other persistent course of conduct in Ohio. *Beightler*, 610 F. Supp. 2d at 850. Thus, plaintiffs have not carried their burden to make a prima facie showing of personal jurisdiction pursuant to subsection (A)(4) of Ohio's long-arm statute.

### Ohio Rev. Code § 2307.382(A)(5)—causing injury in Ohio by breach of express or implied warranty

Plaintiffs must make the same showing to establish personal jurisdiction under subsection (A)(5) as (A)(4). *Beightler*, 610 F. Supp. 2d at 850 (citations omitted). The Court has concluded, *supra*, that plaintiffs have failed to allege facts sufficient to establish that MHS derives "substantial revenue" from goods used in Ohio, regularly does or solicits business in Ohio, or engages in any other persistent course of conduct in Ohio. For these same reasons, therefore, plaintiffs are also unable to carry their burden to make a prima facie showing of personal jurisdiction pursuant to subsection (A)(5) of Ohio's long-arm statute.

### 2. Federal due process

"Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn*, 667 F.3d at 712 (citations omitted). "Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.* (citations omitted).

If there is no basis for jurisdiction under Ohio's long-arm statute, it is unnecessary to analyze jurisdiction under the Due Process Clause. *Id.* (citing *Brunner v. Hampson,*

441 F.3d 457, 467 (6th Cir. 2006) (holding that where the plaintiff cannot show jurisdiction under the Ohio long-arm statute a Due Process analysis is unnecessary) (further citation omitted)). Because the Court has determined that plaintiffs have not alleged facts that establish this Court has jurisdiction over MHS based on Ohio's long-arm statute, there is no need for the Court to undertake a Federal due process analysis.

For all of the foregoing reasons, MHS' motion to dismiss for lack of personal jurisdiction is granted. MHS is dismissed from this case.

### III. JAYCO's MOTION FOR SUMMARY JUDGMENT[13]

**A. Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the

---

[13] Jayco argues in its motion, without citation to legal authority, that Nicholson lacks standing to bring a claim against Jayco "other than to suggest that he may be a buyer of the [RV]." (Jayco Mot. at 188-89.) In response, plaintiffs contend that as a shareholder of CNI, Nicholson has standing to bring a direct action for his own injury because he purchased the RV and paid for repairs with his personal—not corporate—funds. (Opp'n to Jayco Mot. at 480-81.) In support of their argument, plaintiffs cite *Maloof v.BT Commer. Corp.*, 261 F. App'x. 887, 889 (6th Cir. 2008), wherein the Sixth Circuit affirmed the district court's dismissal of a case brought by a shareholder for lack of standing because the shareholder claimed no direct personal injury due to the defendant's alleged misconduct.

Plaintiffs' reliance on *Maloof* is misplaced. Just as with the plaintiff in *Maloof*, Nicholson does not claim an injury that is "separate and distinct" from the alleged injury to the corporation, in this case, CNI. *See B. & V. Distrib. Co. v. Dottore Companies, LLC*, 278 F. App'x 480, 485-86 (6th Cir. 2008) (citing *Crosby v. Beam*, 548 N.E.2d 217, 219 (Ohio 1989)). As the Court has ruled herein, Nicholson's business was the purchaser and owner of the RV. Nicholson's claims are derivative of and contingent upon CNI's claims for breach of warranty and various deceptive practices based upon the RV's alleged defects. Jayco has no independent obligation to Nicholson that is separate and apart from CNI's claims. *Id.* (failure of defendant to pay individual plaintiff the purchase price for his company acquired by defendant through an asset purchase agreement is inextricably intertwined and entirely derivative of the injury allegedly suffered by the corporation—the right to receive payment was not an obligation independently owed to plaintiff by the defendant, but entirely contingent upon the acquisition of the corporate assets of the corporation).

Accordingly, Jayco's motion for summary judgment as against Chuck Nicholson for lack of standing is granted.

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the Court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co*. 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> Summary judgment is required:
>
> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. Claim I—Breach of Express Warranty[14]

"To establish a claim for breach of express warranty under Ohio law, a plaintiff must show that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided the defendant with reasonable notice of the defect; and (4) plaintiff

---

[14] Claim 1 has two components—breach of express and implied warranties. The Court will separately address plaintiffs' claim for breach of implied warranty, below.

suffered injury as a result of the defect." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d 955, 960 (Ohio Ct. App. 2015.)  Privity is not required to impose liability for breach of an express warranty. *Id*. (citations omitted).

### 1. Jayco's express warranty

The warranty provisions at issue are found at Doc. No. 18-3 ("Warranty").[15] The dispute between the parties is over the limitations/exclusions to the warranty. The warranty contains a section entitled "WHAT IS NOT COVERED." (Warranty at 206-07 (capitalization in original).) A second section is entitled "EVENTS DISCHARGING ENTEGRA FROM OBLIGATION UNDER WARRANTY." (*Id*. at 207-08 (capitalization in original).) According to its terms, the warranty does not cover:

> . . . any RV used for rental or other commercial purposes (Note: It shall be concluded that the RV has been used for a commercial and/or business purposes if the RV owner or user files a tax form claiming any business or commercial tax benefit related to the RV, or if the RV is purchased, registered, or titled in a business name); . . .

(*Id*. at 206-07.)

Among the things that "completely discharge Entegra from any obligation under this warranty and void it" is "any rental or other commercial use or purchase of the RV (as defined in this warranty)[.]" (*Id*. at 207-08.)

---

[15] In Ohio, an express warranty can be created in a number of ways as described in Ohio Rev. Code § 1302.26.

### 2. Nicholson's business purchased the RV

Nicholson admits that the RV was purchased,[16] registered, and titled[17] in the name of Nicholson's business, which is wholly owned by Nicholson and his wife, Billie. (12/30/15 Nicholson Aff. ¶ 6.) In Ohio, the Certificate of Title evinces ownership of a vehicle. *See* Ohio Rev. Code § 4505.04(A); *Braucher v. Mariemont Auto*, No. C-010599, 2002 WL 1393570, at *2 (Ohio Ct. App. June 28, 2002) ("R.C. 4505.04(A) provides that a person only acquires ownership of a motor vehicle when the vehicle's certificate of title is issued to that person."). The RV was deliberately purchased in this manner in order to obtain certain licensing, tax, and insurance benefits. (12/30/15 Nicholson Aff. ¶ 6.)

In addition to the sales agreement, numerous other documents related to the purchase, sale, and registration of the RV reflect the Nicholson business as the owner/purchaser of the RV. These documents, signed on behalf of the corporation by Billie Nicholson, one of the corporation's owners and officers, include the following:

---

[16] The sales agreement for the RV identifies "Chuck Nicholson Leasing Inc." as the purchaser. (Sales Agreement at 29.) When the RV was purchased, Nicholson mistakenly thought that Chuck Nicholson Leasing Inc. was a separate corporation, but it is not, "and simply operates under the auspices of Chuck Nicholson, Inc." (1/19/16 Nicholson Aff. ¶ 2.)

When this action was first filed in state court, Chuck Nicholson Leasing Inc. was a named plaintiff. Plaintiffs subsequently moved the state court to substitute CNI for Chuck Nicholson Leasing Inc. as the party that should have been named as the plaintiff in the lawsuit, and the state court judge granted the motion. (Doc. No. 18-4.) The Court may take judicial notice of this state court record. *See Embassy Realty Inv., LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 570-71 (N.D. Ohio 2012) (citations omitted).

[17] The RV was titled in Ohio on March 3, 2014 in the name of "Chuck Nicholson Inc." (Doc. No. 33-3.)

(1) Disclaimer of Warranties by MHS (Doc. No. 40-1);

(2) Texas Motor Vehicle Sales Tax Exemption Certificate (Doc. No. 18-8);

(3) certificates of origin for the coach and chassis of the RV (Doc. Nos. 18-9 and 18-10);

(4) Affidavit & Representation Regarding Trade-in Vehicle (Doc. No. 18-11); and

(5) Assignment of Title (Doc. No. 18-6 at 219).

Based on these undisputed facts, Jayco argues that it is entitled to summary judgment on plaintiffs' claim for breach of express warranty because the RV is subject to the commercial purpose warranty exclusion language contained in Jayco's warranty, thus plaintiffs cannot establish the existence of a binding warranty—an essential element of their claim. Plaintiffs disagree, and offer several arguments in support of their position.

Although the RV was intentionally purchased by Nicholson's business, Nicholson swears in his affidavit that he did not intend to use the RV for business purposes, and never did. (12/30/15 Nicholson Aff. ¶ 6; 1/19/16 Nicholson Aff. ¶¶ 3-4.) Nicholson further maintains that because he did not intend to use the RV for a business purpose, he individually—not the company—is the real owner/purchaser of the RV. Moreover, Nicholson avers that he personally paid for the RV and repairs. (1/19/16 Nicholson Aff. ¶ 3.)

Further in support of their argument that Nicholson, individually, was the actual purchaser of the RV, plaintiffs point to the Entegra Warranty Registration and Customer Delivery Form which identifies "Chuck Nicholson" as the owner.[18] But this document

---

[18] Related to this argument, plaintiffs point to a letter from Jayco addressed to "Chuck Nicholson" following the purchase of the RV with instructions about obtaining service for the RV (Doc. No. 33-7), as well as a warranty notice addressed to Chuck Nicholson from Aqua-Hot for replacement of pumps under warranty (Doc. No. 45-1). Plaintiffs also contend that these documents show that Nicholson, not his company, was the real purchaser and owner of the RV. (*See* Doc. No. 45.)

does not support plaintiffs' argument that Nicholson, not a Nicholson business, was the purchaser and owner of the RV. Chuck Nicholson did not sign the warranty registration and customer delivery form. (*See* Doc. No. 33-6 ("Warr. Regis.") at 510, 512.) Rather, the document is signed by his wife, Billie Nicholson, who also signed the five above-listed documents identifying Nicholson's company as the owner/purchaser of the RV. There is no evidence in the record of a power of attorney or other authority from which it might be concluded that Billie Nicholson was signing the document for Nicholson as an individual, rather than on behalf of Nicholson's company as one of its owners and officers.

The Jayco warranty is clear that a vehicle is used for a commercial purpose if it is purchased, registered, or titled in the name of a business. (*See* Warranty at 207.[19]) There is no dispute that the RV was purchased, registered, and titled in the name of a Nicholson

---

[19] Plaintiffs argue that the warranty language providing for a conclusion of commercial use/purpose upon the occurrence of certain listed acts "may be taken to mean that a presumption is created[,]" and, if a presumption is created, the term is ambiguous because "Jayco's warranty fails to say if this presumption is rebuttable or not." Plaintiffs further argue that this ambiguity must be interpreted against Jayco "thus raising an issue of fact since it is undisputed that the Nicholsons [sic] use of the RV was entirely personal and family use." (Opp'n to Jayco Mot. at 477.) Plaintiffs cite no legal authority to support this argument.

"[P]rinciples of contract interpretation apply with equal force when interpreting warranty provisions." *Nee v. State Indus., Inc.*, 3 N.E.3d 1290, 1300 (Ohio Ct. App. 2013) (citations omitted). When contract terms are not defined they are given their plain and ordinary meaning unless some other meaning is clearly evidenced from the instrument or a manifest absurdity would result. *Id.* at 1299 (citations omitted). A contract term is ambiguous if the term is susceptible to more than one reasonable interpretation. *Id.* at 1300 (citations omitted).

The term at issue is: "It shall be concluded that the RV has been used for a commercial and/or business purposes if the RV owner or user files a tax form claiming any business or commercial tax benefit related to the RV, or if the RV is purchased, registered, or titled in a business name[.]" When used as a noun, a conclusion means a final decision or judgment; a necessary consequence; a result or outcome. *See* http://www.merriam-webster.com/dictionary/conclusion. The ordinary meaning of presumption, on the other hand, means a belief that something is true even though it has not been proved. *See* http://www.merriam-webster.com/dictionary/presumption. The Court finds that the term is not susceptible to more than one reasonable interpretation, and unambiguously describes the events that establish a bright line test for application of the warranty exclusion.

business (1/19/16 Nicholson Aff. ¶ 3), thus satisfying the warranty's limitation/exclusion for commercial use. Jayco's warranty does not contain an exception to this limitation/exclusion for intended personal or recreational use of a commercially purchased RV, or for the source of funds used to purchase and service the RV, and plaintiffs do not claim that it does.

Thus, there is no genuine issue of material fact that the RV was purchased and titled in the name of CNI, and based on those undisputed facts, the RV falls squarely in the "commercial use or purpose" limitation/exclusion language of the Jayco warranty.

### 3. Jayco's commercial purpose warranty exclusion is not unconscionable

Regardless of who purchased the RV and its intended use, plaintiffs argue that Jayco's commercial purpose limitation/exclusion fails because it is unconscionable and void under Ohio Rev. Code § 1302.15 for three reasons: (1) plaintiffs were misled regarding the terms of the Jayco warranty; (2) there was a "severe imbalance" in bargaining power regarding the terms of the warranty; and (3) the warranty exclusion clause is outrageous. (Opp'n to Jayco Mot. at 484, citing *Muscioni v. Clemons Boat*, No. E-04-045, 2005 WL 2008021, at *3 (Ohio Ct. App. Aug. 19, 2005) (warranty provision relieving seller of responsibility and requiring buyer to ship the boat, at buyer's expense, back to the manufacturer was so outrageous as to be unconscionable).) *See also DG Equip. Co. v. Caterpillar, Inc.*, No. 3:08-CV-317, 2008 WL 4758672, at *5 (S.D. Ohio Oct. 27, 2008) ("a contract clause is unconscionable where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous[]") (quoting *Hurst v. Enter. Title Agency,* 809

N.E.2d 689, 694 (Ohio Ct. App. 2004), *appeal not allowed,* 815 N.E.2d 679 (Ohio 2004)).

The unconscionability of the commercial purpose limitation/exclusion in the Jayco warranty is an issue of law for the Court,[20] and in Ohio, is governed by Ohio Rev. Code. § 1302.15:[21]

> (A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Ohio Rev. Code § 1302.15.

Unconscionability has both a procedural and substantive element. *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 616 (N.D. Ohio 2016). "The procedural element focuses on oppression and surprise, which arise, respectively, from an inequality in bargaining power resulting in the absence of a meaningful choice or hidden, unexpected terms." *Id.* (citations omitted). "The substantive element, on the other hand, turns on reasonableness. Courts have found a term to be substantively suspect if it 'reallocates the risks of the bargain in a objectively unreasonable or unexpected manner.'" *Id.* (citations omitted).

---

[20] *Muscioni,* 2005 WL 2008021, at *3 (citing *Hurst,* 809 N.E.2d at 694 (quoting *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.*, 423 N.E.2d 151, 156 (Ohio 1981))).

[21] Uniform Commercial Code § 2-302 (Unconscionable contract or clause) is codified in Ohio as Ohio Rev. Code § 1302.15.

> ***Plaintiffs were not misled that Jayco's warranty had no limitations or exclusions, and a copy of the warranty was provided prior to purchase of the RV***

Plaintiffs contend that they were misled by both MHS and Jayco because both represented that the RV came with a 2 year written warranty from Jayco without any limitation or exclusion, that MHS did not tell Nicholson that the RV would not be covered by Jayco's warranty if purchased by his business, and that Nicholson did not learn of any warranty limitations or exclusions until after the RV was purchased. (Opp'n to Jayco Mot. at 484-85; 12/30/15 Nicholson Aff. ¶¶ 7-9.)

According to plaintiffs, MHS "represented to us and to the general public that the [RV] came with a 2 year written manufacturer's warranty from [Jayco] *without any limitations*. A true and accurate copy of [MHS'] online advertisement for our motorhome referencing the [Jayco] warranty is attached hereto as Exhibit 4." (12/30/15 Nicholson Aff. ¶ 7 (emphasis added).) Even assuming for the purpose of this analysis that Jayco was liable for MHS' online advertisement,[22] exhibit 4 does not support Nicholson's averment that MHS represented the Jayco warranty was "without any limitations." Indeed, Exhibit 4 specifically states: "ALL ENTEGRA COACH MOTOR HOMES COME WITH A SUPERIOR 2YR/24K MILE *LIMITED WARRANTY*!" (Doc. No. 33-4 (capitalization in original) (further emphasis added).)

Plaintiffs also claim that "[Jayco] itself" represented that the 2 year manufacturer's warranty was without limitation, advancing in support two Jayco magazine advertisements referencing the Jayco warranty. (12/30/15 Nicholson Aff. ¶ 7;

---

[22] Jayco's warranty provides that Jayco is not responsible for any promises or warranties made by a dealer beyond the warranty provided by Jayco. (Warranty at 205.)

Doc. No. 33-5.) The first advertisement does not support Nicholson's averment: "Our promise includes a manufacturer's *limited warranty* against defects in materials and workmanship, warranted to the original purchaser for two years . . .." (Doc. No. 33-5 at 508 (emphasis added).) The second advertisement (Doc. No. 33-5 at 509) references a 2 year warranty without indicating that the warranty is with or without limitation. Regardless, this advertisement is not relevant to the Court's analysis because the advertisement was not used by Jayco until March, 2015—more than one year after the RV was purchased by Nicholson's company. (*See* Doc. No. 48 (Affidavit of Ashley Lehman ["Lehman Aff."]) ¶¶ 3-4.)

Finally, the advertisement attached to the complaint belies plaintiffs' claim that Jayco represented the warranty was without limitation. Jayco's "Entegra Coach Peace of Mind" advertisement contains a link that describes the warranty in two short paragraphs, and states that the warranty is limited and covers only the intended purpose of recreational travel and camping. The second paragraph advises the reader to contact a dealer for "complete details." (Compl. ¶ 9; Doc. No. 1-1 at 24-25.)

There is no evidence in the record supporting plaintiffs' contention that they were told by Jayco or MHS that the Jayco warranty had no limitations or exclusions. Indeed, the undisputed record evidence advanced by plaintiffs supports a contrary conclusion.

Plaintiffs' contention that they did not learn of any limitations or exclusions in the Jayco warranty until after the RV was purchased is also not supported by the record. Both Chuck Nicholson and his wife Billie Nicholson signed documents stating that they received and reviewed Jayco's warranty prior to purchasing the RV.

As discussed *supra*, the Entegra Warranty Registration and Customer Delivery Form was signed by Billie Nicholson. (Warr. Regis. at 512.) Immediately above her signature is the following language:

> "I certify that the dealer has performed the above inspection and that I have received, read and understood the Limited Warranty applicable to this product prior to purchase and I understand the terms thereof and the intended use of the product."

(*Id.*) [23]

In addition to certifying that a copy of Jayco's Limited Warranty had been provided, read, and understood, prior to purchase, Billie Nicholson also certified that MHS made no warranties regarding the RV, or any oral or written representations, contrary to or beyond those made by Jayco's warranty. (Doc. No. 44-2 (Disclaimer of Warranties).) Billie Nicholson is presumed to have read and understood both the warranty registration and the disclaimer of warranties. *See Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 745 (Ohio 2007) (it is a "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed[]"); *see also State ex rel. DeWine v. C & D Disposal Techs.,*--N.E.3d--, 2016 WL 538490, at *4 (Ohio Ct. App. 2016) (signatory to consent order presumed to have actual knowledge of its terms).

---

[23] The limited warranty, in addition to containing the commercial purpose exclusion, provides that "Entegra makes no warranty of any nature beyond that contained in this limited warranty. Entegra does not authorize any person to create any other obligation or liability for it regarding this RV, and Entegra is not responsible for any representation, promise or warranty made by any dealer or other person beyond what is expressly stated in this limited warranty, and no one has the authority to enlarge, amend or modify this limited warranty." (Warranty at 205.)

Similarly, Chuck Nicholson represented when he signed the sales agreement purchasing the RV in the name of a Nicholson business that MHS had delivered Jayco's warranty to him and that he reviewed the warranty prior to purchase and understood that Jayco's warranty was the only warranty applicable to the RV. (Sales Agreement at 29, ¶ 3(c).) Chuck Nicholson avers in his affidavit that a copy of Jayco's warranty was not received until after the RV was purchased. Yet, even this fact is belied by Billie Nicholson's certification that she received, read, and understood the Limited Warranty applicable to the RV prior to purchase.

### There was no severe imbalance in bargaining power regarding the terms of the warranty

Plaintiffs' second argument is that the commercial purpose exclusion is unconscionable because there is a severe imbalance in bargaining power between MHS and plaintiffs because: (1) no one told plaintiffs about the warranty exclusion; (2) MHS knew that the RV would be purchased by a Nicholson business; and (3) a copy of the Jayco warranty was not provided until after the RV was purchased. (Opp'n to Jayco Mot. at 485.)[24]

---

[24] Most of plaintiffs' arguments regarding imbalance of bargaining power were previously addressed in the context of plaintiffs' arguments that they were misled as to the terms of the warranty.

The RV was not the first motor home purchased by a Nicholson business with a limited warranty, including a commercial purpose clause.[25] (*See* 12/30/15 Nicholson Aff. ¶ 6.) Findings of unconscionability in transactions between commercial entities are rare. *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.,* 537 N.E.2d 624, 639 (Ohio 1989) (citation omitted). Moreover, Nicholson and/or his businesses own car dealerships and, therefore, are familiar with the concept of vehicle warranties. (*See* Doc. No. 40-1 at 855-56, ¶ 3 and at 852-53.)

Nicholson and CNI's experience in vehicle sales and warranties is a factor to consider with respect to the balance of bargaining power. Nicholson was well-versed in the differences between purchasing the RV as an individual versus by one of his businesses. Neither Nicholson nor CNI is a typical, unsophisticated purchaser of motor homes. *See Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 549 (N.D. Ohio 2006) (limitation of warranty to repair and replace not unconscionable due to disparity of bargaining power between a builder purchasing windows for a personal residence and defendant); *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 822 N.E.2d 841, 846 (Ohio Ct. App. 2004) (In determining procedural unconscionability, a court should consider factors such as age, education, intelligence, business acumen, and experience in similar transactions); *see also Anderson v. Newmar Corp.*, 319 F. Supp. 2d

---

[25] There is no dispute that the Monaco motor home traded-in for the RV also had a limited warranty. (Jayco Reply at 834; Doc. No. 40-1 at 855-56, ¶ 4; Doc. No. 40-1 at 858.) The Monaco warranty reduces the warranty for a motor home used for "any rental, commercial or business purposes whatsoever" from 1 year to 90 days. (Doc. No. 40-1 at 858.) Similar to the Jayco warranty, the Monaco warranty provides that "[a] conclusive presumption that your motorhome has been used for commercial and/or business purposes arises if you have filed a federal or state tax form claiming any business tax benefit related to your ownership of the motorhome." (*Id.*) Plaintiffs did not seek leave to file a sur-reply to dispute documents filed with Jayco's reply in support of its motion for summary judgment.

943, 949 (D. Minn. 2004) ("Anderson's contention that he is an unsophisticated purchaser is disingenuous. He has purchased no fewer than five motor homes and describes himself as an expert in motor homes.").

### *Commercial purpose exclusion is not outrageous or unreasonable*

Plaintiffs' final argument in support of unconscionability is that the commercial purpose warranty exclusion is outrageous and unreasonable because, regardless of the intended and/or actual use of the RV, the exclusion applies if "the owner or user files a tax form claiming any business or commercial tax benefit related to the RV, or if the RV is purchased, registered, or titled in a business name." (Opp'n to Jayco Mot. at 485, record cite omitted.)

"When considering substantive unconscionability, a court should determine whether the terms of the contract are commercially unreasonable." *Featherstone*, 822 N.E.2d at 846 (citation omitted). "No set of general factors governs commercial unreasonableness; rather considerations will vary on a case by case basis." *Price v. Taylor*, 575 F. Supp. 2d 845, 852 (N.D. Ohio 2008) (citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.,* 680 N.E.2d 240, 243 (1996)). "That said, some of the factors courts have considered when determining substantive unconscionability are: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Christ Holdings, L.L.C. v. Schleappi*, --N.E.3d--, 2016 WL 3522037, at *10 (Ohio Ct. App. June 15, 2016).

It is plaintiffs' burden to establish unconscionability of the commercial purpose exclusion. Plaintiffs offer no evidence that Jayco's commercial purpose exclusion is commercially unreasonable. Indeed, plaintiffs do not dispute that the limited warranty of

their Monaco motor home trade-in defined commercial purpose in a similar manner as the Jayco warranty, or that the Monaco motor home's limited warranty shortened the warranty term by 75 percent for commercial use. At a minimum, it should not have been a surprise to plaintiffs that a motor home's warranty may be affected by a commercial use/purpose provision as defined in the manufacturer's warranty.

Based upon the foregoing consideration of factors with respect to unconscionability of the commercial purpose exclusion in the Jayco warranty, the Court concludes as a matter of law that plaintiffs have not carried their burden of establishing that the commercial purpose exclusion is unconscionable. The principle of unconscionability "is one of prevention of oppression and unfair surprise . . . not the distribution of allocation of risks[.]" Ohio Rev. Code § 1302.15 n. 1.

Plaintiffs were not misled regarding the terms of the warranty—a warranty which Billie Nicholson certified was received, read, and understood prior to the purchase. Both Nicholson and his businesses are repeat, sophisticated motor home purchasers in the business of automotive sales with more experience regarding vehicle warranties than an average motor home purchaser. The commercial purpose restriction in Jayco's warranty was not an unfamiliar concept to plaintiffs as a similar provision was contained in a previously purchased motor home by a different manufacturer. It was not commercially unreasonable for Jayco to limit its risk as to motor homes purchased for commercial purposes. Plaintiffs were not required to purchase the RV but could have purchased a motor home by a different manufacturer, with different warranty terms. Nicholson also could have purchased the RV in his own name, given that he insists that it was purchased

for his own personal use. However, plaintiffs intentionally chose to purchase the RV through a Nicholson business in order to gain tax and other financial benefits.

Based on the undisputed record, the Court finds that plaintiffs have failed to establish both the procedural and substantive elements of their claim that Jayco's commercial purpose warranty exclusion is unconscionable.[26] *Traxler*, 158 F. Supp. 3d at 616; *Featherstone*, 822 N.E.2d at 846; *see also Haga v. Martin Homes, Inc.*, No. 2000AP020018, 2000 WL 1133267, at *3 (Ohio Ct. App. Aug. 4, 2000) (facts sufficient to support finding that an arbitration clause is not unconscionable where appellants were previously involved in retail installment contracts, appellant  was the manager of a "rent-to-own" business involved in sales agreements, appellants admit that they were given an opportunity to read the agreement and contract and did not question the provision, and appellants were free to secure alternative financing).

Accordingly, the Court concludes as a matter of law that the commercial purpose exclusion in Jayco's warranty is not unconscionable and, therefore, enforceable.

### 4. Plaintiffs have not carried their burden to establish waiver

Plaintiffs further argue that defendants are not entitled to summary judgment with respect to Jayco's express warranty because Jayco provided warranty service to the RV, and thus waived its right to enforce the commercial purpose exclusion in the Jayco

---

[26] On summary judgment, the Court finds that there are no genuine issues of material fact relevant to the issue of unconscionability, from which the Court has determined as a matter of law that the commercial purpose is not unconscionable. Neither party sought a hearing on the issue of unconscionability, and the Court concludes that a hearing is not necessary in this case. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 966 (N.D. Ohio 1998) (Ohio law counsels against a finding of unconscionability in the absence of a fair opportunity to present evidence on the issue.); *DG Equip. Co.*, 2008 WL 4758672, at *6 (finding disclaimer of warranty not unconscionable as a matter of law and concluding that a hearing is not necessary); *see also Genaw v. Lieb*, No. Civ.A. 20583, 2005 WL 435211, at *6 (Ohio Ct. App. Feb. 25, 2005) (finding that trial court did not err in concluding that arbitration agreement was not unconscionable and refusing to hold a hearing on the issue of unconscionability).

warranty. (Opp'n to Jayco Mot. at 487, citing *Globe Metallurgical, Inc. v. Hewlett-Packard Co.*, 953 F. Supp. 876, 882 (S.D. Ohio 1996), *aff'd,* 99 F.3d 1139 (6th Cir. 1996).) While conceding that it provided warranty service for the RV, Jayco disputes that it waived the commercial purpose exclusion, arguing that the only document submitted to Jayco that initiates warranty coverage for the RV is the warranty registration form, and that form identifies Chuck Nicholson as the purchaser. Indeed, Nicholson himself points to the warranty transfer form as part of his argument that he, as an individual, was the actual purchaser of the RV. Jayco further argues that it is undisputed that all of the warranty claims submitted by Nicholson to Jayco were in the name of Chuck Nicholson—not CNI—the title owner of the RV.[27] Jayco reasons that it could not have waived the commercial purpose exclusion because it was misled by the incorrect information provided on the warranty transfer form and warranty claims, and plaintiffs should not benefit from supplying incorrect information to Jayco. (Jayco Reply at 839-40.)

"As a general rule, the doctrine of waiver is applicable to all personal rights, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy." *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 954 (S.D. Ohio 2001) (quoting *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors,* 665 N.E.2d 202, 207 (1996) (citation and internal quotation marks omitted)). "Under the law of Ohio, waiver is defined as the voluntary relinquishment of a known right." *Wilkes Assocs.*, 144 F. Supp. 2d at 954 (citing *Chubb v. Ohio Bureau of Workers'*

---

[27] *See* Doc. No. 40-1 at 855-56, ¶ 6; 40-1 at 862-864.

*Comp.,* 690 N.E.2d 1267, 1269 (1998)). "A waiver may be either express or implied from a party's conduct." *Id.* (citing *Griffith v. Linton,* 721 N.E.2d 146 (Ohio Ct. App. 1998); *Goetz v. First Benefits Agency, Inc.,* No. 18381, 1997 WL 669727 (Ohio Ct. App. Oct. 15, 1997)).

> Whether express or implied, waiver must be intentional.
>
> "Waiver is mainly, or essentially, a matter of intention. Thus, a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it. Indeed, the essence of a waiver, as indicated by the definition, is the voluntary and intentional relinquishment of a known right, claim, or privilege. Whether an alleged waiver is express or implied, it must be intentional. Mere negligence, oversight, or thoughtlessness does not create a waiver." *Hicks v. Estate of Mulvaney,* Montgomery App. No. 22721, 2008-Ohio-4391, 2008 WL 3990811, ¶ 13, quoting *Russell v. Dayton* (May 18, 1984), Montgomery App. No. 8520, 1984 WL 4896, at *3.

*State Farm Mut. Auto. Ins. Co. v. Ingle*, 904 N.E.2d 934, 938–39 (Ohio Ct. App. 2008). The burden to prove intent falls to the party asserting the waiver. *See McMillen v. Willys Sales Corp.,* 193 N.E.2d 160, 164 (Ohio Ct. App. 1962).

Plaintiffs admit that the RV was deliberately purchased by and titled in the name of Nicholson's business, that the name of the purchaser on the warranty registration form did not include "Inc.", and that all repair orders for the RV were submitted in the name of Chuck Nicholson, not CNI. (*See* Doc. No. 33-10.) There is no evidence in the record before the Court that Jayco knowingly provided warranty service to CNI.

Moreover, plaintiffs have advanced no evidence that Jayco was aware that CNI was the true owner of the RV, notwithstanding the information on the warranty transfer

form,[28] and on the repair orders and warranty claims. Thus, there is no evidence from which a reasonable jury could conclude that by providing warranty coverage for the RV, Jayco intentionally and voluntarily waived the commercial purpose exclusion.[29] While a jury might conclude that Jayco's provision of warranty service to the RV was careless or negligent or an oversight with respect to the true ownership of the RV, that is insufficient under Ohio law to constitute a waiver. *State Farm Mut. Auto. Ins. Co.*, 904 N.E.2d at 938–39.

Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver. *Natl. City Bank v. Rini*, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005). "'[W]aiver by estoppel' exists *when the acts and conduct of a party are inconsistent with an intent to claim a right,* and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." *Id.* (citations omitted) (emphasis in original); *see also State Farm Mut. Auto. Ins. Co.*, 904 N.E.2d at 939. Plaintiffs cannot establish waiver by estoppel, however, because they neither claim nor offer evidence that they were prejudiced because Jayco provided some warranty service to the RV notwithstanding the commercial purpose exclusion.

Accordingly, the Court concludes that plaintiffs have failed to carry their burden to establish that Jayco waived its right to enforce the commercial purpose exclusion.

---

[28] Billie Nicholson's signature on the warranty transfer form identifying Chuck Nicholson as the purchaser of the RV appears at the bottom of the last page of the form. Even if Jayco was aware that Billie Nicholson, not Chuck Nicholson, signed the warranty transfer form, plaintiffs have advanced no evidence that Jayco knew on whose behalf Billie Nicholson signed the warranty transfer form.

[29] The Court recognizes that whether a party's conduct constitutes a waiver is generally a question of fact for a jury to determine. *See Wilkes Assocs.*, 144 F. Supp. 2d at 954 (citations omitted). But in this case, plaintiffs have advanced no evidence upon which, if believed, a reasonable jury could find in favor of plaintiffs on the issue of waiver.

**5. Jayco is entitled to summary judgment with respect to plaintiffs' claim for breach of express warranty**

The undisputed facts are that the RV was purchased by and titled in the name of a Nicholson business. The Court has concluded as a matter of law that the commercial purpose warranty exclusion is not unconscionable under Ohio law and, thus, is enforceable. No reasonable jury could conclude that the RV was not subject to the commercial purpose exclusion contained in the Jayco warranty. Accordingly, Jayco is entitled to judgment as a matter of law with respect to plaintiffs' claim for breach of express warranty.

**C. Claim I—Breach of Implied Warranty**

Jayco argues that plaintiffs' breach of implied warranty claim fails for want of privity. According to Jayco, because plaintiffs purchased the RV from MHS and have no contractual relationship with Jayco, plaintiffs are not in privity of contract with Jayco. (Jayco Mot. at 190.)

Citing *Curl v. Volkswagen of America, Inc.*, 871 N.E.2d 1141 (Ohio 2007), plaintiffs contend that "the parties are in sufficient privity under the principles of agency" to support an implied warranty claim. (Opp'n to Jayco Mot. at 488.) *Curl* does not help plaintiffs' cause. Rather, *Curl* stands for the well-accepted principle that there is no

privity between a vehicle's manufacturer and the ultimate consumer because the dealer, generally, does not act as the manufacturer's agent.[30]

In this case, plaintiffs merely argue that the privity necessary to pursue a breach of implied warranty claim against Jayco exists because MHS is Jayco's agent. Plaintiffs, however, advance no evidence of any sort that Jayco exercised the requisite control over MHS that would transform MHS from a mere authorized dealer[31] of Jayco products into an agent. *See Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 993-94 (S.D. Ohio 2014) (citations omitted).

Based on the undisputed evidence in the record, MHS is nothing more than an authorized dealer of Jayco products. Thus, there is no vertical privity between plaintiffs and Jayco, and Jayco is entitled to judgment as a matter of law under Ohio law on plaintiffs' claim for breach of implied warranty. Accordingly, Jayco's motion for summary judgment on plaintiffs' first claim for breach of implied warranty is granted.

**D. Claim II—Violation of Magnuson-Moss Warranty Act**

In the second claim, plaintiffs contend that Jayco breached both express and implied warranties in violation of the Magnuson-Moss Warranty Act ("MMWA"). "In order to state an actionable claim of breach of warranty and/or violation of the [MMWA], a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the

---

[30] The court in *Curl* concluded that there was no direct privity between Curl and Volkswagen, nor a relationship between the dealer and Volkswagen that established privity under principles of agency law. *Curl*, 871 N.E.2d at 1148. ("[I]n Ohio, vertical privity exists only between immediate links in the distribution chain") (citing *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 952 (Ind. 2005) ("Simply put, vertical privity exists only between immediate links in a distribution chain.")). "Ohio courts have held that distributors, in general, do not act as their manufacturer's agent." *Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, No. 08-CV-01453, 2009 WL 3242050, at *6 (N.D. Ohio Sept. 30, 2009) (citation omitted). Rather, the issue of distributorship agency focuses on the level of control exercised by the manufacturer over the distributor. *Id.* (citation omitted).

[31] *See* Compl. ¶ 58.

item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Enter., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). "Ultimately, the applicability of the Magnuson–Moss Act is directly dependent upon a sustainable claim for breach of warranty. Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson–Moss Act." *Temple*, 133 F. App'x at 268 (internal citation omitted) (citing *Labonte v. Ford Motor Co.*, No. 74855, 1999 WL 809808, at *7 (Ohio Ct. App. Oct. 7, 1999)); *see also Conrad v. Winnebago Indus., Inc.*, No. 2:06-CV-953, 2008 WL 1696950, at *3 (S.D. Ohio Apr. 9, 2008) (if there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act) (citation omitted); *Sirlouis v. Four Winds Int'l Corp.*, No. 1:10 CV 00469, 2012 WL 1068709, at *14 (N.D. Ohio Mar. 29, 2012) (same) (citation omitted).

The parties' briefs with respect to plaintiffs' second claim reflect agreement that plaintiffs' MMWA allegations are derivative of plaintiffs' first claim for relief for breach of express and implied warranties. Having concluded that defendants are entitled to summary judgment on plaintiffs' first claim, Jayco is also entitled to judgment as a matter of law on plaintiffs' second claim.

**E. Claim III—Violation of Ohio Consumer Sales Practices Act ("CSPA") and Texas Deceptive Trade Practices Act ("TDTPA")**

With respect to plaintiffs' third claim, Jayco contends that other than referencing the Jayco's alleged breach of express and implied warranties with respect to the RV, plaintiffs plead no specific facts showing how Jayco violated either the Ohio or Texas

acts.[32] Jayco argues that it is entitled to summary judgment on this claim for the same reason that it is entitled to summary judgment on plaintiffs' breach of warranty and MMWA claims. To the extent claim three alleges violations of these acts beyond breach of express and implied warranty, Jayco contends that plaintiffs have failed to plead the factual predicate for any such allegations. (Mot. at 192-93.) Plaintiffs argue in opposition that, even if their third claim pertaining to warranty issues fails, plaintiffs have alleged other facts that support an alleged violation of the CSPA and TDTPA by Jayco. (Opp'n to Jayco Mot. at 490.)

### 1. Ohio Consumer Sales Practices Act

The CSPA (Ohio Rev. Code § 1345.01 *et seq.*) prohibits a supplier[33] from committing "an unfair or deceptive act or practice in connection with a consumer transaction" whether before, during, or after the transaction. Ohio Rev. Code § 1345.02(A); *Risner, Inc.*, 8 F. Supp. 3d at 996. To make out a claim under the CSPA, a plaintiff must "show a material misrepresentation, deceptive act or omission" that impacted his decision to purchase the item at issue. *Temple*, 133 F. App'x at 265 (quoting *Mathias v. Am. Online, Inc.,* No. 79427, 2002 WL 377159, at *5 (Ohio Ct. App. Feb. 28, 2002); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012) (citing *Temple*, 133 F. App'x at 265). Ohio Rev. Code § 1345.02(B)(1)-(10) identifies 10 acts or practices considered to be unfair or deceptive acts or practices under the CSPA.

---

[32] Plaintiffs' third claim raises allegations against Spartan, MHS and Jayco. It is unclear from the claim which state's laws are alleged to be violated by which of the three defendants. Plaintiffs' allegations against Jayco in the third claim are found in paragraphs 56, 60, 61, and 62 of the complaint.

[33] Ohio Rev. Code § 1345.01(C) defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. . . ."

In their opposition, plaintiffs claim that Jayco violated the CSPA when it: (1) breached its express and implied warranty to plaintiffs; (2) violated the MMWA; (3) misrepresented the extent of the RV's warranty in violation of Ohio Rev. Code § 1345.02(B)(10) ("Jayco advertised that the 2014 Entegra Cornerstone RV came with a 2 year written manufacturer's warranty without stating any limitations or exclusions."); (4) represented in violation of Ohio Rev. Code § 1345.02(B)(1) that the RV "came with a warranty without limitation or exclusions," that the RV "provided the industry's best driving experience," and that Jayco had a "steadfast commitment to customer service"; (5) represented in violation of Ohio Rev. Code § 1345.02(B)(2) that the RV was of a particular standard or quality when it actually had a laundry list of defects; (6) failed to provide the RV with the warranty advertised—"a 2 year written manufacturer's warranty from Jayco <u>without any limitations or exclusions</u>" in violation of Ohio Rev. Code § 1345.02(B)(5) (emphasis in original); (7) in violation of Ohio Rev. Code § 1345.03(B)(5), "required" plaintiffs to purchase the RV with a commercial purpose exclusion where the exclusion was not disclosed or made available in advance of the sale, and regardless of the actual or intended use of the RV; (8) in violation of Ohio Rev. Code § 1345.02(A), Jayco refused to comply with its statutory duty to accept return of the RV; and (9) represented that the defects in the RV were repaired when they were not. (Opp'n to Jayco Mot. at 490-94.[34]) The Court will consider these nine points in groups, based on similarity of the arguments made in support of the alleged CSPA violation.

---

[34] These nine items are a consolidation of the list of alleged CSPA violations found at ¶ 62 of the complaint. Because plaintiffs have grouped and argued their CSPA claims in this fashion, the Court's analysis will follow the same consolidated list.

### *Breach of warranty*

The Court has concluded that Jayco is entitled to summary judgment with respect to plaintiffs' claims for breach of warranty and violation of the MMWA. Therefore, Jayco is also entitled to summary judgment on plaintiffs' first, second, and eighth[35] bases for alleging in claim three that Jayco violated the CSPA.

### *Misrepresentation of warranty*

With respect to plaintiffs' allegation that Jayco violated CSPA because it represented that the 2 year warranty had no limitations or exclusions, and failed to deliver an RV with the warranty advertised, the Court has previously detailed the Jayco advertisements and documents received and signed by plaintiffs in connection with their purchase of the RV that *expressly states the 2 year warranty is limited*, and that the warranty was received by plaintiffs before purchasing the RV. For the same reasons previously discussed, the Court concludes that no reasonable juror could find in favor of plaintiffs that Jayco represented that its warranty was without limitation or exclusion.

---

[35] Ohio Revised Code § 1345.72 provides that:

> (A) If a new motor vehicle *does not conform to any applicable express warranty* and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

> (B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

> ****

Ohio Rev. Code § 1345.72 (emphasis added).

Therefore, defendants are entitled to summary judgment on plaintiffs' third, fourth, and sixth bases for alleging in claim three that Jayco violated the CSPA.

### Quality of the RV

Plaintiffs further claim that Jayco violated the CSPA by misrepresenting the quality of the RV through statements such as the RV provided the "industry's best driving experience," was the "quietest riding, best handling coach on the market," and that Jayco provided a "steadfast commitment to customer service." Statements of opinion and "mere puffing" are not actionable under the CSPA. *Risner*, 8 F. Supp. 3d at 998 (citing *Davis v. Byers Volvo*, No. 11CA817, 2012 WL 691757, at *8 (Ohio Ct. App. Feb. 24, 2012) (citations omitted)).

"It is common knowledge and may always be assumed that any seller will express a favorable opinion concerning what he has to sell[,]" and buyers are expected to and do understand that they are not entitled to rely literally on a seller's praise of a product in general terms. *Id.* (quoting *Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 963-64 (N.D. Ohio 1997)). Thus a CSPA action does not lie against a dealer who describes an automobile as "the best in the American market," or a dealer that represents a truck as "rock solid," or a representation that a dealership has a "tradition of excellence." *Id.* These subjective statements, like Jayco's, are not actionable under the CSPA, and Jayco is entitled to summary judgment on this CSPA claim. *See e.g., Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725–27 (N.D. Ohio 2009) (citing among other cases, *Outdoor Tech., Inc. v. Vinyl Visions, LLC,* No. 1:06–cv–044, 2006 WL 2849782, at *4 (S.D. Ohio Sept. 29, 2006) (finding that "the statements 'most weatherable' and 'strongest warranty' are mere 'puffery' .... 'Puffery' is

exaggerated blustering or subjective boasting upon which no reasonable consumer would rely.")).

Even were the Court to conclude that the statements at issue by Jayco regarding the quality of the RV were misrepresentations of fact and not mere opinion or puffery, plaintiffs have advance no evidence the alleged misrepresentations impacted plaintiffs' decision to purchase the motor home, which is an element of a claim for violation of the CSPA. *Temple*, 133 F. App'x at 265 (To establish a claim under the CSPA, a plaintiff must "show a material misrepresentation, deceptive act or omission" that *impacted his decision to purchase* the item at issue.) While Nicholson has repeatedly averred that Jayco's 2 year warranty was material to the decision to purchase the RV (*see* 1/19/16 Nicholson Aff. ¶ 5), plaintiffs have advanced no such evidence with respect to the advertised purported quality of the RV. Thus, plaintiffs cannot establish an essential element of their claim, and Jayco is entitled to summary judgment for this additional reason. *Celotex*, 477 U.S. at 322-23.

Accordingly, for the foregoing reasons, Jayco is entitled to summary judgment on plaintiffs' fourth and fifth bases supporting the CSPA claim against Jayco.

### *Warranty limitations and exclusions not disclosed prior to purchase*

Plaintiffs next claim that Jayco violated the CSPA by requiring plaintiffs to purchase the RV with a commercial purpose exclusion where the exclusion was not disclosed or made available in advance of the sale, and regardless of the actual or intended use of the RV. Plaintiffs' contention that they did not learn of any limitations or exclusions in the Jayco warranty until after the RV was purchased has been previously extensively analyzed, and is not supported by the undisputed record. The Entegra

Warranty Registration and Customer Delivery Form is signed by Billie Nicholson, where she certified that she received the RV's limited warranty prior to purchase and that she read, and understood "the terms thereof and the intended use of the product." (Warr. Regis. at 512.) There is no evidence in the record to the contrary regarding Billie Nicholson's certification.

Given the undisputed evidence in the record, no reasonable juror could conclude that plaintiffs did not receive, read, and understand Jayco's warranty prior to purchase; thus plaintiffs' claim in that regard does not serve as a basis for a CSPA violation. Accordingly, defendants are entitled to summary judgment on plaintiffs' seventh basis alleging that Jayco violated the CSPA.

### *Representing that defects were repaired when they were not*

It is a deceptive trade practice for a supplier to "[r]epresent that repairs have been made or services have been performed when such is not the fact." *See Crye v. Smolak*, 674 N.E.2d 779, 782 (Ohio Ct. App. 1996) (citing Ohio Adm. Code 109:4-3-13(C)(9)). Plaintiffs allege that "Jayco and/or Spartan" violated the CSPA by falsely representing that "defects in the RV have been repaired when in fact they were not." (*See* Compl ¶ 62, subparagraph 11; *see also* Opp'n to Jayco Mot. at 494.)

Jayco argues that it is entitled to summary judgment on this claim because plaintiffs never brought the motorhome to Jayco for repairs and that Jayco only processed the warranty work because it believed, at the time, that the RV was under warranty. (Jayco Reply at 844.) Jayco provides no legal authority, however, regarding how these facts, if undisputed, entitle Jayco to summary judgment on this particular CSPA allegation.

Plaintiffs do not dispute that Jayco did not perform any repairs on the RV.[36] Nicholson avers, however, that after every repair (which at the time were made under warranty), Jayco represented "that the defects had been fixed, but the following defects were never fixed: severe air leak in suspension which rendered the motorhome unsafe to drive, toilet flush malfunction, bed gas props inoperative, Samsung TV darkens for short durations, and satellite receiver frequently acts up and is noisy." (1/19/16 Nicholson Aff. ¶ 7, citing Exhibit 11.)

Exhibit 11, advanced by plaintiffs in support of this alleged CSPA violation, is a collection of emails between and among Nicholson, Jayco, and Spartan. Plaintiffs do not direct the Court's attention to which of these more than 100 pages supports plaintiffs' opposition to Jayco's motion for summary judgment on plaintiffs' CSPA claim. The Court is not required to search the record for evidence that supports a party's' position on summary judgment. *See NanoLogix, Inc. v. Novak*, No. 4:13-CV-1000, 2016 WL 1170776, at *9 (N.D. Ohio Mar. 25, 2016) (citations omitted).

Both parties have provided only cursory briefing with respect to this particular alleged CSPA violation. Neither party provides a proper legal analysis in support of their brief, conclusory arguments. It is not the Court's obligation to conduct the required research, construct arguments, and frame a legal analysis on any party's behalf.

---

[36] Jayco authorized the repairs, but the repairs were performed by a variety of other service providers, not by Jayco. (*See* Doc. No. 33-10.) Also, some of the repair orders included in plaintiffs' exhibit in opposition to Jayco's motion for summary judgment were billed to or sold to "Spartan Chassis Warranty" or "Spartan Motor Inc." and not to Jayco.

It is the moving party's burden to establish, based on undisputed facts, that it is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also Getachew v. Columbus City Sch.*, No. 2:11-CV-861, 2012 WL 748783, at *1 (S.D. Ohio Mar. 8, 2012) ("The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.") (citing *Celotex*, 477 U.S. at 323). Due to incomplete briefing on this issue, and even if the facts are undisputed that (1) Jayco itself did not perform the repair work to the RV; and/or (2) that the repair work was performed under warranty because Jayco was misled by plaintiffs, the Court is unable to properly analyze this claim.

Accordingly, Jayco's motion for summary judgment on plaintiffs' claim that Jayco violated the CSPA when Jayco represented the repairs to the RV were made when they were not, is denied.

## 2. Texas Deceptive Trade Practices Act

Plaintiffs advance the same allegations to support both their CSPA and TDTPA claims. Like the CSPA, the TDTPA contains a laundry list of acts or practices considered to be false, misleading or deceptive under Texas law. *See* Tex. Bus. & Com. Code § 17.46(b).

In advocating for dismissal of this claim, Jayco offers the same arguments it advances for dismissal of plaintiffs' CSPA claim. Yet, Jayco provides no case citations or legal analysis that demonstrates that Texas law is identical to Ohio law with respect to all of the issues in this case relative to warranty and deceptive practices. Alternatively, Jayco

argues that plaintiffs have failed to plead a claim under the TDTPA. This argument also lacks any legal analysis to support the motion. (*See* Jayco Reply at 843-44.)

As discussed above, it is the burden of the moving party to demonstrate that it is entitled to judgment. Jayco's motion on this claim merely consists of conclusory statements devoid of legal analysis under Texas law. Accordingly, Jayco's motion for summary judgment on plaintiffs' TDTPA claims is denied. *See* Fed. R. Civ. P. 56(a); *Getachew,* 2012 WL 748783, at *1.

## IV. PLAINTIFFS' RULE 15 MOTION TO AMEND

### A. Plaintiffs' Proposed Amendment

Plaintiffs seek leave to amend the complaint in order to make three changes to the complaint. A description of the proposed amendments, and the proposed amendments themselves, are taken directly from plaintiffs' motion and attached proposed amended complaint (Doc. No. 30-1 (Proposed Amended Complaint ["PAC"]).)

> 1. A new subparagraph 13 to paragraph 62 which is based on facts alleged in paragraph 35. (P. Mot. at 281.)

>> ¶ 62. As a result of the above, and among other things, one or more unfair and/or deceptive and/or unconscionable acts and practices were committed by Jayco and/or Spartan, jointly and/or severally, and remain uncured, including but not limited to:
>> ****

>> 13. Violation of the Ohio Nonconforming New Vehicle Motor Vehicle law, O.R.C. 1345.71 et seq.

(PAC at 299-300.)

> 2. A fourth claim is added alleging a violation of the Ohio Deceptive Trade Practices Act, O.R.C. 4165.01 et seq. (a business entity version of the consumer-based Ohio Consumer Sales Practices Act) which incorporates the facts already stated in the Complaint. (P. Mot. at 281.)

## FOURTH CLAIM: OHIO DTPA LAW

69. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

70. This claim is for violation of the Ohio Deceptive Trade Practices Act (hereafter referred to as the Deceptive Practices Act), R.C. 4165.01et seq, by Jayco and is brought by Chuck Nicholson, Inc.

71. Chuck Nicholson, Inc. and Jayco are each a "person" under R.C. 4165.01(D).

72. In the course of its business, vocation, or occupation, Jayco represented that the subject vehicle and its related goods or services have uses and/or benefits that they did not have.

73. In the course of its business, vocation, or occupation, Jayco represented that the subject vehicle and its related goods or services were of a particular standard or quality when they were not.

74. As a direct and proximate result of the above, Chuck Nicholson, Inc. was damaged and injured.

(PAC at 302-03.)

3. A paragraph is added to the prayer for relief which reflects the new fourth claim under the Ohio Deceptive Trade Practices Act statute. (P. Mot. at 281.)

### PRAYER FOR RELIEF

****

4. On the fourth claim, such damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial[.]

(PAC at 304.)

In their motion, plaintiffs point out that the proposed amendment does not affect MHS or MHS' motion to dismiss. (P. Mot. at 281.) With respect to defendant Jayco, plaintiffs contend that Jayco's pending summary judgment motion is not affected by the addition of the new fourth claim against Jayco, or the addition to paragraph 62 of

subparagraph 13 against Jayco and Spartan. Plaintiffs further argue that the proposed amendments will not prejudice the defendants or delay the case, and thus should be granted. (P. Mot. at 280-81.)

Only Jayco opposes the motion, arguing that it should be denied on the basis of futility because the proposed amendment will become moot if the Court grants summary judgment in Jayco's favor on the issue of warranty. Jayco also argues that the motion is untimely, and that Jayco may suffer prejudice if the motion is granted.

**B. Standard of Review**

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs plaintiffs' motion to amend. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires." "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Courts should freely give leave to amend in the absence of these factors. *Foman*, 371 U.S. at 182.

"Futility, alone, can constitute a satisfactory ground for denying a motion for leave to amend." *Charity v. GMAC Mortg. Inv., Inc*., No. 4:09-cv-02958, 2010 WL 3648949, at *13 (N.D. Ohio Sept. 14, 2010) (citing *Wiedbrauk v. Lavigne*, 174 F. App'x 993 (6th Cir. 2006)). In conducting a futility analysis, "the only proper inquiry is whether a proposed amendment could withstand a Rule 12(b)(6) motion. The test for futility 'does not depend on whether the proposed amendment could possibly be dismissed on a motion

for summary judgment.'" *Larsen v. Mercy Health Partners*, No. 1:11-CV-12, 2011 WL 3325897, at *2 (W.D. Mich. Aug. 2, 2011) (quoting *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420-21 (6th Cir. 2000)); *Zecotek Imaging Sys. Pte Ltd. v. Saint-Gobain Ceramics & Plastics, Inc.*, No. 5:12-CV-1533, 2014 WL 1912589, at *9 (N.D. Ohio May 13, 2014) (same) (citing *Rose*). That said, if a "motion to amend is made in response to a motion for summary judgment, the Court must consider the evidence in the record and cannot assess the proposed amendment as if the evidence does not exist. In such a case, the proposed amended pleading is futile if it could not survive the summary judgment motion." *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 752 (E.D. Mich. 2010), *aff'd sub nom. Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 F. App'x 85 (6th Cir. 2012).

**C. Analysis**

In this case, plaintiffs do not seek to amend the complaint in order to defeat Jayco's motion for summary judgment—plaintiffs opposed the motion. The proposed amended complaint does not disturb Jayco's motion for summary judgment, but adds two additional bases for relief under the Ohio Nonconforming New Vehicle Motor Vehicle law, Ohio Rev. Code § 1345.71 *et seq*., and Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*.

### 1. Ohio Nonconforming New Vehicle Motor Vehicle Law
### (Ohio Rev. Code § 1345.71 *et seq*.)

This law is commonly referred to as the Ohio Lemon Law. The proposed new

claim depends upon the existence of a warranty on the vehicle.[37]

**1345.72 Repair of new vehicle with warranty nonconformity; replacement of vehicle; return and refund of full purchase price; liability of dealer; effect on loan, retail installment sales contract, or lease.**

(A) If a new motor vehicle *does not conform to any applicable express warranty* and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

\*\*\*\*

Ohio Rev. Code § 1345.72 (emphasis added).

An essential element of plaintiffs' proposed Ohio Lemon Law claims is the

existence of an express warranty on the vehicle. The Court has ruled that there is no

express warranty because the commercial purpose exclusion is valid and enforceable, and

there is no implied warranty because plaintiffs lack privity with Jayco. These rulings

---

[37] The definition of a motor vehicle includes a motor home. *See* Ohio Rev. Code § 1345.71(D).

constitte the law of the case. *Harco Indus., Inc. v. Elco Textron, Inc.*, No. 3:04-CV-048, 2005 WL 2085973, at *5 (S.D. Ohio Aug. 26, 2005) ("a decision of a legal issue establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case") (citations omitted). Therefore, allowing plaintiffs to amend their complaint to assert a claim for violation of the Ohio Lemon Law would be futile because they cannot establish a required element of the claim—the existence of an express or implied warranty with respect to the RV. *See Multari v. Bennett*, No. 105-CV-355, 2006 WL 2583144, at *5 (E.D. Tenn. Sept. 6, 2006) (district court's grant of summary judgment to defendant Chamber of commerce on claim for libel on the grounds that there was no "publication" constitutes the law of the case, and allowing plaintiff to amend the complaint to assert a libel claim against a different defendant would be futile because plaintiff cannot show the required element of publication).

Accordingly, plaintiffs' motion to amend the complaint to add a claim under the Ohio Lemon Law is denied.

### 2. Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.01 *et seq.*)

The Ohio Deceptive Trade Practices Act ("ODTPA") identifies a laundry list of acts that constitute deceptive trade practices. *See* Ohio Rev. Code § 4165.02. In order to prove a claim under the ODTPA, CNI[38] must establish that

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing

---

[38] The ODTPA is substantially similar to Section 43(a) of the Lanham Act, which protects the interests of commercial entities, not individual consumers. *See Lester v. Wow Car Co.*, No. 2:11-CV-850, 2014 WL 2567087, at *11 (S.D. Ohio June 6, 2014), *aff'd*, 601 F. App'x 399 (6th Cir. 2015).

decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Allied Erecting,* 649 F. Supp. 2d at 725 (the analysis for determining liability under the ODTPA is the same as for the Lanham Act).

The proposed additional ODTPA claim contains two allegations.

### RV's uses and benefits

The first ODTPA allegation is that Jayco represented that the RV had "uses and benefits" that it did not. (PAC ¶ 72.)

It is a deceptive trade practice under Ohio's Deceptive Trade Practices Act to:

****

(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

****

Ohio Rev. Code § 4165.02(A)(7).

This deceptive trade practice under the ODTPA is very similar to the deceptive trade practice that plaintiffs alleged against Jayco in violation of the CSPA.

****

(B) . . . the act or practice of a supplier in representing any of the following is deceptive:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

****

Ohio Rev. Code § 1345.02(B)(1).

Plaintiffs do not allege any new facts in support of the ODTPA claim brought by CNI that differ from the facts alleged in support of plaintiffs' CSPA claim. Indeed, plaintiffs simply incorporate all prior allegations and claims into the proposed fourth claim. (PAC ¶ 69.)

The Court has already concluded as a matter of law that Jayco's statements regarding the RV, such as the "industry's best driving experience" providing the "quietest riding, best handling coach on the market," and that Jayco provided a "steadfast commitment to customer service," are mere puffing and the same analysis applies to Jayco's statements regarding the use and benefits of the RV to CNI. Such statements are not actionable under the ODTPA. *Allied Erecting,* 649 F. Supp. 2d at 725 (citations omitted).

To the extent that the "use and benefits" includes Jayco's alleged advertising that the RV came with a warranty without limitation or exclusion, the Court has also previously concluded that Jayco is entitled to judgment as a matter of law with respect to plaintiffs' claim that Jayco's representation of the RV's warranty was deceptive.

### *RV's standard and quality*

Second, the proposed fourth claim alleges that Jayco represented that the RV was of a certain standard or quality when it was not. (PAC ¶ 73.)

It is a deceptive trade practice under the ODTPA to:

(9) Represent[] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

Ohio Rev. Code § 4165.02 (A)(9).

This deceptive trade practice under the ODTPA is very similar to the deceptive trade practice that plaintiffs alleged against Jayco in violation of the CSPA.

\*\*\*\*

(B) . . . the act or practice of a supplier in representing any of the following is deceptive:

\*\*\*\*

   (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

\*\*\*\*

Ohio Rev. Code § 1345.02(B)(2).

Plaintiffs do not allege any new facts in support of the ODTPA claim brought by CNI that differ from the facts alleged in support of plaintiffs' CSPA claim. In arguing that Jayco's conduct violated § 1345.02(B)(2), plaintiffs simply referred to their arguments and evidence advanced in support of its § 1345.02(B)(1) claim. (*See* Opp'n to Jayco Mot. at 492.)

The Court's prior ruling granting Jayco's motion for summary judgment on plaintiffs' § 1345.02(B)(2) claim establishes the law of the case. Thus, for the same reasons, plaintiffs cannot prevail on their ODTPA claim pursuant to Ohio Rev. Code § 4165.02 (A)(9).

For all of the foregoing reasons, plaintiffs' motion to amend the complaint to assert an ODTPA claim is futile based on the Court's prior rulings and the law of the case. Accordingly, plaintiffs' motion to amend is denied.

### V. CONCLUSION

For all of the foregoing reasons, MHS' motion to dismiss and motion to exceed page limitations, are granted. (Doc. Nos. 6 and 43.) Plaintiffs' motion to amend the complaint is denied. (Doc. No. 30.)

Jayco's motion for summary judgment (Doc. No. 18) is granted in part and denied in part, as follows:

(1)    With respect to plaintiffs' first and second claim, the motion is granted.

(2)    With respect to plaintiffs' third claim, the motion is denied as to plaintiffs' claim for violation of the Texas Deceptive Trade Practices Act; denied as to plaintiffs' claim that Jayco violated the CSPA when it represented that repairs to the RV were made when they were not; and granted in all other respects.

(3)    With respect to whether plaintiff Chuck Nicholson lacks standing, the motion is granted.

**IT IS SO ORDERED**.

Dated: September 29, 2016

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**